IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  CRIMINAL NO: 3:23-CR-85-GHD-RP

NATHANIEL WILSON BUTLER  DEFENDANT

**AMENDED MEMORANDUM OPINION**

Presently before the Court is the Defendant's Motion to Dismiss Indictment [17]. The Defendant, who has previously been convicted of a felony, is presently charged by indictment for (Count One) knowingly possessing ammunition while a convicted felon and (Count Two) knowingly possessing a firearm and ammunition while a convicted felon, both counts in violation of Title 18, U.S.C. § 922(g)(1) and 924(a)(8). The Defendant argues, in light of the United States Supreme Court's decision in *N.Y. State Rifle & Pistol Association v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022), that § 922(g)(1) is unconstitutional as applied to him. Upon due consideration, as set forth herein, the Court finds that the Defendant's motion should be denied.

**Legal Standard**

Federal Rule of Criminal Procedure 12 provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12(b)(1). If a pretrial motion presents a question of law in a case involving undisputed facts, Rule 12 authorizes the court to rule on the motion. United States v. Flores, 404 F.3d 320, 325 (5th Cir. 2005). Here, the Court finds that because the Defendant's motion does not require the resolution of any disputed facts related to Defendant's indictment or prior convictions; the Court may therefore issue a decision on the motion without any further factfinding.

1

## *I.  Analysis*

The Court has previously fully analyzed the constitutionality of Section 922(g)(1) in the case of *Jackson*. *United States v. Jackson*, No. 4:23cr089, 2023 WL 6881818 (N.D. Miss. Oct. 18, 2023). In the Court's prior opinion, the Court held that *Bruen* did not abrogate existing Fifth Circuit precedent and that 922(g)(1) passed constitutional muster under *Bruen* and as applied to that specific defendant. In this case, Defendant Butler argues that the statute is unconstitutional as applied to him, however the Defendant fails in demonstrating how the statute would apply to him differently as opposed to any other felon in possession of a firearm. As stated in *United States v. Humphrey*, "[a]s over a hundred courts in the Fifth Circuit have affirmed, *Bruen* does not create a new rule of constitutional law calling into question the constitutionality of § 922(g)(1) convictions." *United States v. Humphrey*, No. 2:07-cr-20101-01, 2023 WL 8816387 (W.D. La. Dec. 20, 2023) (citing *United States v. Bazile*, 2023 WL 7112833, at *3–*4 (E.D. La. Oct. 27, 2023)) (collecting cases). For the reasons discussed in the Court's present opinion and the reasons discussed in the Court's previous opinion in *Jackson*, the Court finds that the Defendant's motion should be denied.

### A. The Supreme Court and the Second Amendment

The Second Amendment states that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. Amend. II. 18 U.S.C. § 922(g)(1) provides that "it shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

2

In 2008, the Supreme Court held that the Second Amendment confers an individual, as opposed to a collective, right to bear arms. *Dist. of Columbia v. Heller*, 554 U.S. 570, 580 (2008). The Supreme Court noted, however, that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Id.* at 626. Relevant here, the Court further stated that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* In a footnote, the Supreme Court classified these traditional restrictions on firearm possession as a non-exhaustive list of "presumptively lawful regulatory measures." *Id.* at 627, n.26.

Two years later, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Supreme Court incorporated the Second Amendment's guarantees against the States through the Fourteenth Amendment. In doing so, the Court repeated that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626-27).

Post-*Heller*, the Fifth Circuit adopted a two-step inquiry for analyzing laws that might infringe on the Second Amendment. See *Hollis v. Lynch*, 827 F.3d 436, 446 (5th Cir. 2016). Under this inquiry, courts would first ask whether the conduct at issue fell within the scope of the Second Amendment right to bear arms, evaluating "whether the law harmonizes with the historical traditions associated with the Second Amendment guarantee." *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives [NRA]*, 700 F.3d 185, 194 (5th Cir. 2012). If the burdened conduct fell outside the scope of the Second Amendment, then the law was constitutional, and the inquiry was over. *Id.* at 194–95. If the burdened conduct fell within the scope of the Second Amendment, courts would proceed to step two of the inquiry, and would determine whether to apply strict or intermediate scrutiny, depending on the nature of the conduct

3

being regulated and the degree to which the challenged law burdens the individual Second Amendment right. *Id.* at 195. This second part of the test became known as means-end scrutiny. *Id.*

Using this test, both before and after *Heller*, the Fifth Circuit has repeatedly upheld 18 U.S.C. § 922(g)(1) — the statute challenged here — against Second Amendment challenges. *See United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (citing *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004); *United States v. Darrington*, 351 F.3d 632, 633–34 (5th Cir. 2003)). The Fifth Circuit has long recognized that "it is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms," *United States v. Emerson*, 270 F.3d 203, 261 (5th Cir. 2001), and that "legislative prohibitions on the ownership of firearms by felons are not considered infringements on the historically understood right to bear arms protected by the Second Amendment." *Darrington*, 351 F.3d at 634; see also *Everist*, 368 F.3d at 519 ("It is not inconsistent with the Second Amendment to limit the ability of convicted felons to keep and possess firearms."). The Fifth Circuit has repeatedly determined that arguments regarding the unconstitutionality of Section 922(g)(1) are foreclosed by the Circuit's existing precedent. *See Scroggins*, 599 F.3d at 451. In *Heller*, the Supreme Court reinforced the position that felons do not enjoy the same Second Amendment protections as other Americans (perhaps in dicta, however), explicitly noting that its holding that the Second Amendment confers an individual right should not "be taken to cast doubt on long-standing prohibitions on possession of firearms by felons." *Heller*, 554 U.S. at 626.

The Supreme Court subsequently issued its 2022 decision in *Bruen*. The decision repudiated the two-step approach embraced by the Fifth Circuit and other circuit courts of appeals post-*Heller*. In doing so, the Supreme Court explained that "[s]tep one of the predominant

4

framework is broadly consistent with *Heller*," as it "demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 142 S. Ct. at 2127. The Supreme Court further held, however, that *Heller* does not support the second step of the framework — means-end scrutiny — because it allows courts to balance Second Amendment protections with governmental interests and policy considerations. *Id.* The Supreme Court held that instead, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," and the Government bears the burden to affirmatively prove that "its firearm regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.* at 2126–27. In other words, lower courts evaluating the constitutionality of firearms regulation post-*Bruen* must focus solely on, first, the text of the Second Amendment and, second, "the Nation's historical tradition of firearm regulation." *Id.* at 2129–30.

### B. The Fifth Circuit and the Second Amendment

In a pre-*Heller* case, the Fifth Circuit analyzed the Second Amendment's text and history to conclude that it "protects individual Americans in their right to keep and bear arms whether or not they are a member of a select militia or performing active military service training." *Emerson*, 270 F.3d 203, 260 (5th Cir. 2001). The Court also held that "[i]t is clear that felons, infants and those of unsound mind may be prohibited from possessing firearms." *Id.* at 261. The Fifth Circuit likewise specifically held that Section 922(g)(1) did not violate the Second Amendment in *Darrington*, 351 F.3d 632, 633-34 (5th Cir. 2003) and in *Everist*, 368 F.3d 517, 519 (5th Cir. 2004).

After *Heller*, the Fifth Circuit returned to the issue and again held that Section 922(g)(1) remained constitutional, in light of *Heller*'s endorsement of "longstanding prohibitions on the possession of firearms by felons." *United States v. Anderson*, 559 F.3d 348, 352 (5th Cir. 2009)

5

(citing *Heller*, 554 U.S. at 626). The Fifth Circuit repeated this holding in *Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) and more recently in *United States v. Massey*, 849 F.3d 262, 265 (5th Cir. 2017). See also *United States v. Jordan*, 650 F. Supp. 3d 531, 2023 WL 157789, at *2-3 (W.D. Tex. Jan. 11, 2023) (compiling Fifth Circuit precedent on the constitutionality of § 922(g)(1)).

Since *Bruen* was decided in 2022, the Fifth Circuit has not directly addressed a renewed constitutional challenge to Section 922(g)(1), although it has found, under plain error review, that "there is no binding precedent explicitly holding that § 922(g)(1) is unconstitutional on its face or as applied" and "it is not clear that either *Bruen* or *Rahimi* dictate such a result." *United States v. Garza*, No. 22-51021, 2023 WL 4044442, at *1 (5th Cir. June 15, 2023); United States v. Fulwiler, 2023 WL 7118748, at *1 (5th Cir. Oct. 27, 2023); *United States v. Roy*, No. 22-10677, 2023 WL 3073266 (5th Cir. April 25, 2023); *United States v. Robinson*, No. 3:212023CR159-N, 2023 WL 4304762 (5th Cir. June 29, 2023); *United States v. Racliff*, No. 22-10409, 2023 WL 5972049 (5th Cir. Sept. 14, 2023) (holding that "there is no binding precedent explicitly holding that Section 922(g)(1) is unconstitutional" and "it is not clear that Bruen dictates such a result").

Numerous district courts in the Fifth Circuit facing constitutional challenges to Section 922(g)(1) post-*Bruen* have rejected arguments that *Bruen* calls into question the Fifth Circuit's long line of precedent upholding Section 922(g)(1). See, e.g., *United States v. Grinage*, No. 5:21-CR-00399-JKP, 2022 WL 17420390, at *8 (W.D. Tex. Dec. 5, 2022) ("[T]he *Bruen* decision does not constitute an intervening change in law which renders § 922(g)(1) unconstitutional either facially or as applied ...."); *United States v. Harris*, No. 5:21-CR-00328-XR, Docket No. 59 (W.D. Tex. Jan. 10, 2023) ("The Supreme Court's opinion in *Bruen* did not reverse or question its earlier writings in *Heller* on the permissible limitations that could be imposed on the Second Amendment.").

6

The Defendant argues that, despite this precedent, this Court should invalidate Section 922(g)(1) as unconstitutional, at least as applied to him. The primary basis for the Defendant's argument is the Fifth Circuit's 2023 decision in *United States v. Rahimi*, in which the Fifth Circuit held that Section 922(g)(8), a related statute regulating firearm possession by a person subject to a domestic violence restraining order, is unconstitutional because it unlawfully infringes on the right of such persons to bear arms under the Second Amendment. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *cert. granted*, No. 22-915, 2023 WL 4278450 (U.S. June 30, 2023). In reaching this conclusion, the Fifth Circuit disregarded two of its prior precedents upholding Section 922(g)(8) against Second Amendment challenges. See *United States v. McGinnis*, 956 F.3d 747 (5th Cir. 2020); *Emerson*, 270 F.3d 203 (5th Cir. 2001). The *Rahimi* court, in finding Section 922(g)(8) unconstitutional, distinguished cases implicating § 922(g)(1), which by its very terms requires a finding that the person in question had, at some point, not been "law-abiding." *Rahimi*, 61 F.4th at 452; 18 U.S.C. § 922(g)(1) (prohibiting "any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess ... any firearm or ammunition.").[1]

District courts in this circuit have reached conflicting results as to how to consider Second Amendment challenges to § 922(g)(1) after *Bruen*, although the near-unanimous majority of cases have found 922(g)(1) to be constitutional. See, e.g., *United States v. Locket*, No. 4:22-CR-072, 2023 WL 5153549 (S.D. Tex. Aug. 10, 2023) (finding that *Bruen* scrutiny was not triggered and

---

[1] Other circuit courts have reached conflicting results regarding Second Amendment challenges to §922(g)(1). See *United States v. Jackson*, 69 F.4th 495, 505–06 (8th Cir. 2023) (holding that "recent decisions on the Second Amendment cast *no doubt* on the constitutionality of laws prohibiting the possession of firearms by felons") (emph. added); but see *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 106 (3d Cir. 2023) (using an individualized analysis and holding that "§ 922(g)(1) cannot constitutionally strip [a non-violent felony offender] of his Second Amendment rights".).

7

denying the defendant's motion to dismiss because "convicted felons forfeit Second Amendment rights."); *United States v. Dillon*, No. 5:23-cr-3, 2024 WL 86492 (S.D. Miss. Jan. 8, 2024); *United States v. Self, Jr.*, No. 4:23-cr-74, 2024 WL 55487 (N.D. Miss. Jan. 4, 2024); United States v. Brown, No. 4:23-cr-71, —— F.Supp.3d ——, 2023 WL 8794641 (N.D. Miss. December 20, 2023); *United States v. Beard*, No. 4:22-cr-92, docket no. 58 (S.D. Tex. Feb. 27, 2023); *United States v. Barber*, No. 4:20-cr-384, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023); *Shipley v. Hijar*, No. 3:23-cv-11, 2023 WL 353994 (W.D. Tex. Jan. 20, 2023); *United States v. Spencer*, No. 2:22-cr-561 (S.D. Tex. Jan. 12, 2023); *Jordan*, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023); *United States v. Cage*, No. 3:21-cr-68, 2022 WL 17254319 (S.D. Miss. Nov. 28, 2022); *United States v. Cockerham*, No. 5:21-cr-6 (S.D. Miss. Sept. 13, 2022); *United States v. Randle*, No. 3:22-cr-20 (S.D. Miss. Sept. 6, 2022); but see, e.g., *United States v. Bullock*, —— F. Supp. 3d ——, No. 3:18-CR-165, 2023 WL 4232309, at *4 (S.D. Miss. June 28, 2023) (finding that *Bruen* "abrogated Fifth Circuit precedent" and concluding that § 922(g)(1) was unconstitutional as applied to the particular defendant).

While acknowledging that district courts have disagreed on this question, this Court is convinced that it remains bound by the Fifth Circuit's treatment of Section 922(g)(1) and holds that it cannot ignore pre-*Bruen* Fifth Circuit precedent on the constitutionality of Section 922(g)(1) absent a Fifth Circuit or Supreme Court decision reaching the issue. Accordingly, the Defendant's motion can be denied on this ground alone. However, in an abundance of caution, the Court finds that it should also conduct the textual and historical inquiry set out in *Bruen*. In any event, the Court's below analysis reaches the same result as the Fifth Circuit's pre-*Bruen* precedent.

### C. *Bruen* Analysis of Section 922(g)(1)

The modern history of prohibiting felons from the possession of firearms began with the

8

passage of the Federal Firearms Act of 1938, which prohibited persons convicted of "crimes of violence" from shipping or transporting firearms in interstate commerce. *See United States v. Charles*, 633 F. Supp. 3d 874, 877 (W.D. Tex. 2022) (outlining history of felon firearm possession prohibition). Firearms regulations were expanded under the Gun Control Act of 1968. *Id.* The regulations were later recodified in 1986 under the Firearms Owners' Protection Act. *See id.* n. 28. Today, 18 U.S.C. § 922(g)(1) provides that "It shall be unlawful for any person — (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year," to, *inter alia*, "possess in or affecting commerce, any firearm or ammunition."

### 1. Textual Analysis

The Court begins with the text of the Second Amendment. On this subject the Supreme Court has read "the Amendment's operative clause," that " 'the right of the people to keep and bear Arms shall not be infringed,' " to mean that it " 'guarantees the individual right to possess and carry weapons . . .' that does not depend on service in the militia." *Bruen*, 142 S.Ct. at 2127 (quoting *Heller*, 554 U.S. at 592).

As an initial matter, because Section 922(g)(1) restricts the "possess[ion]" of "any firearm or ammunition," the Court concludes that Section 922(g)(1) regulates conduct that is facially covered by the plain text of the Second Amendment. *See* 18 U.S.C. § 922(g)(1); *Charles*, 633 F. Supp. 3d at 877 ("[T]he Second Amendment's 'keep and bear arms' language plainly encompasses possession."); *see also United States v. Cage*, No. 3:21CR68-KHJ-FKB, 2022 WL 17254319, at *1 (S.D. Miss. Nov. 28, 2022) ("The Second Amendment's text ... facially covers the conduct § 922(g)(1) restricts."); *United States v. Banuelos*, 640 F.Supp.3d 716, 722–23 (W.D. Tex. 2022) (holding that a felon's "possession" of a firearm is conduct plainly encompassed by the Second Amendment). Thus, the Court proceeds to step two of the *Bruen* analysis. *See Banuelos*, 640

9

F.Supp.3d at 722 ("*Bruen*'s first step does not contemplate the actor or subject .... How [the defendant's] prior felony might impact his Second Amendment right to possess a firearm is more properly assessed under step two's historical tradition analysis.").

### 2. Historical Analysis

#### *i. Scope of the Second Amendment*

In *Heller*, the Supreme Court explained that "the people" as a term, as it appears in the Second Amendment, "unambiguously refers to all members of the political community, not an unspecified subset." *Heller*, 554 U.S. at 580. The Court also indicated "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." *Id.* at 581. Yet, also following *Heller, Bruen* describes "ordinary, *law-abiding*, adult citizens" as indisputably "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S.Ct. at 2134 (emph. added); see also *id.* at 2131 ("The Second Amendment ... 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense.") (quoting *Heller*, 554 U.S. at 635).

Certainly, there has arisen some disagreement between courts as to the initial coverage of the Second Amendment, at least with respect to a felons' possession of firearms. Are "the people" defined as solely law-abiding citizens, such that the Second Amendment does not initially cover felons? Or are "the people" all Americans, such that the Second Amendment covers felons, and the Government must then justify its power to disarm them? Based on its reading of *Heller* and *Bruen*, the Fifth Circuit indicated that the second approach, one concerned with the legislature's ability to take away the right, is the correct one to employ. *Rahimi*, 61 F.4th at 452; see also *Barber*, 2023 WL 1073667, at *6 (rejecting the idea "that all felons are categorically outside the scope of the Second Amendment's text because they are not 'virtuous citizens' " based on *Heller*'s

construction of the Second Amendment). Ultimately, *Rahimi* left the question "unresolved." *Robinson*, 2023 WL 4304762, at *2 (N.D. Tex. June 29, 2023).

The Fifth Circuit in *Rahimi*, however, did base its use of the second approach on the noncriminal status of the defendant — he was "not a convicted felon," but merely "*suspected* of other criminal conduct at the time," so his inclusion in a domestic violence restraining order did "not suffice to remove him from the political community within the amendment's scope." *Rahimi*, 61 F.4th at 452. The Court further stated that "*Heller*'s reference to 'law-abiding, responsible' citizens meant to exclude from the Court's discussion certain groups that have historically been stripped of their Second Amendment rights, *i.e.*, groups whose disarmament the Founders 'presumptively' tolerated or would have tolerated.' " *Id.* (quoting *Heller*, 554 U.S. at 627). "*Bruen*'s reference to 'ordinary, law-abiding' citizens is no different." *Rahimi*, 61 F.4th at 452 (quoting *Bruen*, 142 S.Ct. at 2134).

Therefore, as other courts have held, the Court holds that *Rahimi* does not necessarily foreclose the first approach, that felons are simply not included in the Second Amendment's protection, with respect to convicted felons. See *United States v. Zelaya Hernandez*, —— F.Supp.3d at ——, 2023 WL 4161203, at *3 (N.D. Tex. June 23, 2023) ("*Rahimi* seems to at least leave open the possibility that felons are outside of 'the people' protected by the Second Amendment."). Indeed, *Heller* describes the "longstanding prohibitions" on the possession of firearms by felons as regulatory measures which are "presumptively lawful," *Heller*, 554 U.S. at 627, n. 26, 128 S.Ct. 2783, while *Bruen* held that conduct textually covered by the Second Amendment is "presumptively protect[ed]." *Bruen*, 142 S.Ct. at 2126. Some courts have found these two statements inherently conflicting, *see, e.g., Charles*, 633 F Supp. 3d at 877, but it is also plausible that, taken together, the Supreme Court intended to exclude non-law-abiding citizens,

11

such as felons, from the initial protective umbrella of the Second Amendment.[2]

Some district courts have taken this approach and categorically excluded felons from "the people" protected by the Second Amendment. See, e.g., *Hill*, 2022 WL 17069855. In that case, the district court found that the Second Amendment right's vestment in "the people" referred to a "political community" which is " 'limited to those with *political rights* like voting.' " *Id.* at *4 (quoting *United States v. Collette*, 630 F. Supp. 3d 841, 848 (W.D. Tex. 2022)). Likewise, in *Collette*, a Texas district court reasoned similarly and invoked "the tradition of categorically excluding certain groups from the rights and powers of 'the people.' " 630 F. Supp. 3d at 848.

Given the lack of a definitive ruling on this point from the Supreme Court or the Fifth Circuit, while this Court leans towards a finding that convicted felons are not part of "the people" protected by the Second Amendment, given *Rahimi*'s express preference for further analysis, the Court finds it prudent to continue to a historical analysis of the legislative power to disarm felons.

### ii. Legislative Power to Disarm Felons

The Court begins by noting, as above, that *Heller* explicitly cautioned courts not to "doubt ... longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Heller*, 554 U.S. at 626. Such regulatory measures are "presumptively lawful." *See id.* at 627 n. 26; see also *McDonald*, 561 U.S. at 786 ("We repeat those assurances here," namely, "that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.' ") (quoting *Heller*, 554 U.S. at 626, 128 S.Ct. 2783).

---

[2] *See United States v. Hill*, 2022 WL 17069855, at *5 (S.D. Tex. Nov. 17, 2022) ("This Court doubts that the *Bruen* majority would have viewed laws banning felony possession as 'presumptively lawful' if they thought that the Second Amendment's plain text extended to felons."). *Hill* held—as a matter of the plain text—that laws disarming felons enjoy a presumption of constitutionality "because they fail at the first step—they are not covered by the plain text of the Second Amendment." *Id.* at *5.

12

Further, *Bruen* characterizes itself as "consistent with *Heller* and *McDonald*." 142 S.Ct. at 2122,

Considerable historical evidence exists that colonial-era citizens and their legislatures understood and approved the right to exclude those perceived to be dangerous from possessing firearms. *Zelaya Hernandez*, —— F.Supp.3d at ——, 2023 WL 4161203, at *6. Further historical support for felon disarmament can be found at the time of America's founding. For instance, at the Massachusetts ratifying convention, Samuel Adams proposed an amendment to reflect that the Constitution " 'be never construed ... to prevent the people of the United States *who are peaceable citizens*, from keeping their own arms.' " *Barber*, 2023 WL 1073667, at *9 (emphasis added) (citing 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 675, 681 (1971)). Similarly, "the highly influential minority proposal in Pennsylvania," *Heller*, 554 U.S. at 604, read as follows: "That the people have a right to bear arms for the defense of themselves and their own State or the United States, or for the purpose of killing game; and no law shall be passed for disarming the people or any of them *unless for crimes committed, or real danger of public injury from individuals.*" 2 Schwartz, *supra*, at 665 (emphasis added). Although these amendments were not adopted, they do shed light upon the questions surrounding firearms restrictions that were considered, discussed, debated, and ultimately shaped the contours of the Second Amendment as historically understood.

Most historians agree. While the colonial United States recognized a right to bear arms, it nevertheless took the step of forbidding suspect groups from possessing arms. *See* Don B. Kates & Clayton E. Cramer, *Second Amendment Limitations and Criminological Considerations*, 60 Hastings L.J. 1339, 1360 (2009); *see also* Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 Okla. L. Rev. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded

13

infants, idiots, lunatics, and felons [from possessing firearms]."). Further, founding-era materials reinforce the conclusion that unpeaceable, dangerous, mentally incompetent, or criminal status may deprive one of his or her right to keep and bear arms.[3] Courts have also found support for "the idea that the original understanding of the right codified by the Second Amendment permitted some categorical limits on the right to bear arms," including "the disarmament of persons deemed dangerous or a threat to public safety." *Zelaya Hernandez*, —— F.Supp.3d ——, 2023 WL 4161203 (citations omitted).

Likewise, Section 922(g)(1) imposes a burden on felons which is similar to the colonial-era statutes described above in categorically disarming a class of people. Section 922(g)(1) was enacted for similar reasons, out of concern for the public safety and maintenance of social order, driven by a concern for the dangerousness of the class as a whole. "Congress's intent in enacting §§ 922(g) ... was to keep firearms out of the hands of presumptively risky people." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 112 n. 6, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). "Congress obviously determined that firearms must be kept away from persons, such as those convicted of serious crimes, who might be expected to misuse them." *Id.* at 119.

Given this history, the Court finds that Section 922(g)(1) passes constitutional muster under *Bruen*, facially and as applied to the Defendant. The Court also notes the virtual unanimity among the district courts in the Fifth Circuit upholding Section 922(g)(1) in light of *Bruen*, as well

---

[3] *See also* Robert Dowlut, *The Right to Arms: Does the Constitution or the Predilection of Judges Reign?*, 36 OKLA. L. REV. 65, 96 (1983) ("Colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics, and felons [from possessing firearms]."); Stephen P. Halbrook, *What the Framers Intended:* A Linguistic Analysis of the Right to "Bear Arms", 49 LAW & CONTEMP. PROBS. 151 (1986) ("[V]iolent criminals, children, and those of unsound mind may be deprived of firearms ..."); Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 MICH. L. REV. 204, 266 (1983) ("Nor does it seem that the Founders considered felons within the common law right to arms or intended to confer any such right upon them.").

as the Eighth Circuit's recent decision in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) upholding the constitutionality of Section 922(g)(1) after a similar textual and historical analysis.[4] As the Eighth Circuit has aptly stated:

> In sum, we conclude that legislatures traditionally employed status-based restrictions to disqualify categories of persons from possessing firearms. Whether those actions are best characterized as restrictions on persons who deviated from legal norms or persons who presented an unacceptable risk of dangerousness, Congress acted within the historical tradition when it enacted § 922(g)(1) and the prohibition on possession of firearms by felons. Consistent with the Supreme Court's assurances that recent decisions on the Second Amendment cast no doubt on the constitutionality of laws prohibiting the possession of firearms by felons, we conclude that the statute is constitutional as applied to Jackson.

*Jackson*, 69 F.4th at 505.

This Court agrees and shall therefore deny the Defendant's motion.

## *II. Conclusion*

In sum, for all of the foregoing reasons, the Court finds that the Defendant's motion to dismiss indictment shall be denied.

An order in accordance with this opinion shall issue this day.

THIS, the 29th day of January, 2024.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE

---

[4] *See, e.g., Montes v. United States*, No. 5:21CV38, 2023 WL 3688015, at *1 (S.D. Tex. May 26, 2023) (collecting cases upholding Section 922(g)(1) after *Bruen*); *United States v. Isaac*, No. SA-22-CR-37-XR, 2023 WL 2467886, at *1 (W.D. Tex. Mar. 9, 2023) (observing that "[a]ll district courts within the Fifth Circuit" had theretofore upheld the constitutionality of Section 922(g)(1) under *Bruen*); *Jordan*, 2023 WL 157789, at *8 ("[T]his Court would follow the weight of post-*Bruen* authority from district courts in this Circuit rejecting identical as-applied challenges to Section 922(g)(1).") (citation omitted); *Hill*, 2022 WL 17069855, at *5 (S.D. Tex. Nov. 17, 2022) ("Finally, while not dispositive, this Court notes that, as far as it knows, every other federal court that has assessed the facial or as-applied constitutionality of 18 U.S.C. § 922(g)(1) in the wake of *Bruen* has upheld its constitutionality.") (citation omitted); *Cockerham*, 2022 WL 4229314, at *2 (S.D. Miss. Sep. 13, 2022) ("Federal courts nationwide have rejected similar facial constitutional challenges to the felon-in-possession statute.").